UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
ELIANA RICARDO MONCADA and MARIYA
DUKLER, on behalf of themselves and others
similarly situated,

                          Plaintiffs,                              25-cv-2592 (PKC)

                -against-                              OPINION AND ORDER

NUNA BABY ESSENTIALS, INC.,

                          Defendant.
----------------------------------------------------------x

CASTEL, U.S.D.J.

        Plaintiffs Eliana Ricardo Moncada and Mariya Dukler assert that defendant Nuna

Baby Essentials, Inc. ("Nuna") marketed its Rava-brand children's car-seat product by

emphasizing its safety features and a product-testing regimen that exceeded American standards.

In December 2024, Nuna announced that the Rava's adjustable harness had a design defect that

increased the risk of child injury.  Nuna announced a voluntary recall of the car seat, which was

issued in consultation with the National Highway Traffic Safety Administration ("NHTSA").

But the recall required consumers to cure the defect using a self-repair kit that, plaintiffs allege,

is both difficult to follow and results in a car seat that does not function as originally promised.

        Ricardo Moncada brings claims under sections 349 and 350 of the New York

General Business Law, asserting that she paid a price premium based on Nuna's representations

of a safe, high-quality product, but that the Rava car seat does not function as promised.  Plaintiff

Dukler brings a claim for breach of implied warranty of merchantability.  Plaintiffs seek money

damages for their purported overpayments for their Rava car seats and do not seek equitable

relief.  Subject matter jurisdiction between the New York plaintiffs and the Pennsylvania

defendant is premised on the Class Action Fairness Act, 28 U.S.C. § 1332(d).

Nuna moves to dismiss the Amended Complaint (the "Complaint" or "Compl't")

pursuant to Rule 12(b)(6), Fed. R. Civ. P.  As will be explained, Nuna's motion to dismiss for

lack of Article III standing and prudential standing will be denied.  The Court concludes that

Ricardo Moncada has plausibly alleged factual statements by Nuna that caused her to pay a price

premium for a product that does not work as advertised, thus stating a claim for relief under New

York Business Law sections 349 and 350.  But Dukler did not provide Nuna with pre-suit notice

of her claim, which New York law requires as a condition precedent to bringing a claim for

breach of the implied warranty of merchantability.  The motion to dismiss will be granted as to

Dukler's claim and otherwise denied.

BACKGROUND.

Nuna designs, manufactures and sells a children's car seat called the Rava.

(Compl't ¶ 2.)  It advertised the Rava as a "[f]an favorite for security, longevity and sleek

design," featuring a "[q]uick-release" harness that "makes it easy to fasten [children] in."

(Compl't ¶¶ 3, 30.)  It also advertised the Rava by stating that the product was "extensively

tested" using "advanced" methods that went "above and beyond what's required" through testing

at "accredited, independent labs."  (Compl't ¶ 29.)  Nuna repeatedly touted that the Rava's

"advanced safety technology" exceeded "American safety standards.  (Compl't ¶¶ 31-33.)  Rava

car seats sell for $450 to $550, which the Complaint calls a "premium price."  (Compl't ¶ 35.)

But the Rava's harness-adjustment cover proved to be vulnerable to debris like

crumbs and dust, which prevents the harness from clamping properly and causes the harness to

loosen.  (Compl't ¶¶ 5, 38.)  Consumers lodged complaints about the Rava harness with NHTSA

in 2020 and 2021.  (Compl't ¶ 37.)  In all, NHTSA received 129 complaints about the Rava, 125 of which cited loose harnessing.  (Compl't ¶ 37 n. 23.)

On December 19, 2024, Nuna announced a voluntary recall of Rava models manufactured between July 16, 2016 and October 25, 2023, covering more than 600,000 Rava car seats.  (Compl't ¶¶ 6, 38.)  The recall notice instructed that "[a]ll owners of RAVAs manufactured before October 25, 2023 should request the Remedy Kit to ensure your car seat's harness adjuster is kept clean and working correctly."  (Compl't Ex. A.)  Nuna advised consumers to use a "Harness Function Test" determine whether the product functioned as intended and continue to use the product if no defect was identified.  (Compl't ¶¶ 8, 40 & Ex. A.) If a defect was identified, consumers were instructed to stop using the car seat and "contact Nuna immediately."  (Compl't ¶ 8.)

Plaintiffs assert that these measures were inadequate to resolve the Rava's defects. They describe the "Harness Function Test" prescribed by Nuna as a cumbersome process that parents "are encouraged to perform routinely to make sure the harness is secure . . . ."  (Compl't ¶¶ 40, 46.)  Use of the Remedy Kit was more complex, with both written and video instructions containing "six sub-steps and multiple sub-sub-steps," but ultimately resulting in a seat harness that remained prone to malfunction.  (Compl't ¶¶ 41-45.)  Further, although phrased as a "recall," Nuna did not actually recall the entire product but instead sent affected consumers a "seat pad, head support cover and cleaning kit."  (Compl't ¶ 10.)  Thus, the "recall" put the onus on consumers to disassemble and reassemble "a dangerous and defective product" by using a purportedly flawed "Remedy Kit."  (Compl't ¶¶ 49-52.)  Nuna offered no monetary remedy or option to replace the car seat entirely.  (Compl't ¶¶ 11, 52.)

Though not expressly alleged in the Complaint, a review of certain NHTSA documents that it cites makes it apparent that Nuna's product recall was issued with the approval of the NHTSA and pursuant to the agency's authority.[1] (Compl't ¶ 49 n. 30 (citing "'Part 573 Safety Recall Report Update Dated February 25, 2025,' available at https://static.nhtsa.gov/odi/rcl/2024/RCLRPT-24C002-3238.PDF" (the "Recall Report").) The NHTSA-published Recall Report identifies twelve models of the Rava car seat covered by the recall. (Id.) It describes a defect that arises if debris enters the product's front harness, which prevents the harness adjuster from clamping properly and causes it to become loose, increasing the risk of child injury. (Id. at 5.) It summarized the Remedy Kit, the steps required for consumers to resolve the defect and Nuna's plan for giving consumers notice of the recall. (Id. at 6.) NHTSA also publishes a "Recall Quarterly Report" about the Rava seat. As of January 9, 2026, NHTSA reports that 102,239 products had been "remedied" and 551 "removed" from a total "recall population" of 606,786.[2]

Beginning on October 25, 2023, Nuna began to manufacture a new Rava design that purports to correct the design defects. (Compl't ¶ 47.)

Plaintiff Ricardo Moncada asserts that she bought a Rava car seat in July 2023 for $399.99 after conducting significant product research. (Compl't ¶¶ 63-64.) She asserts that the car seat initially performed as expected but that she later encountered problems adjusting the seat's harness, which often sticks in position. (Compl't ¶ 66.) After receiving Nuna's recall notice in February 2025, she requested a replacement product or a refund, both of which Nuna declined to provide. (Compl't ¶¶ 67-69.) Ricardo Moncada asserts that Nuna engaged in a

---

[1] There is no suggestion that NHTSA's role in the recall process implicates issues of federal preemption of plaintiffs' state law claims.
[2] See https://static.nhtsa.gov/odi/rcl/2024/RCLQRT-24C002-8627.pdf

deceptive, consumer-oriented activity, and that she was injured by overpaying for a product that did not have the qualities claimed by Nuna. (Compl't ¶¶ 93-111.) She seeks a full refund. (Compl't ¶ 71.) Ricardo Moncada brings claims under sections 349 and 350 of the New York General Business Law. (Compl't ¶¶ 93-111.)

Plaintiff Dukler asserts that she bought a Rava car seat in November 2021 for $499.95 after conducting extensive research, and that she relied upon Nuna's advertisements touting the product's safety and quality. (Compl't ¶¶ 72-74.) She states that she did not become aware of Rava's defects until after the recall notice issued, and that she learned of the defects through social media and not through any formal notice. (Compl't ¶ 78.) Dukler requested a Remedy Kit from Nuna, and when it arrived three weeks later, the work required was "time-consuming and confusing." (Compl't ¶¶ 79-80.) Dukler states that the Rava seat now "pushes her child forward into an awkward position," that the seat's harness-adjuster button is obstructed by tight fabric, and that she is burdened with checking the seat harness on each use to ensure that it functions properly. (Compl't ¶¶ 82-83.) Dukler states that had she known of the product's true condition when she bought it, or that Nuna would require her to repair the item herself, she never would have purchased it or would have paid substantially less. (Compl't ¶ 81.) Like Ricardo Moncada, Dukler seeks a full refund. (Compl't ¶ 84.) Dukler brings a claim for breach of the implied warranty of merchantability pursuant to U.C.C. § 2-314. (Compl't ¶¶ 112-122.)

RULE 12(b)(6) STANDARD.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court assessing the sufficiency of a complaint must disregard legal labels or

conclusions, which are not entitled to the presumption of the truth. Iqbal, 556 U.S. at 678.

Instead, the court must examine only the well-pleaded factual allegations, if any, "and then

determine whether they plausibly give rise to an entitlement to relief." Id. at 679. "Dismissal

under Rule 12(b)(6) is therefore appropriate only if 'it is clear from the face of the complaint,

and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a

matter of law.'" Michael Grecco Productions, Inc. v. RADesign, Inc., 112 F.4th 144, 150 (2d

Cir. 2024) (quoting Sewell v. Bernardin, 795 F.3d 337, 339 (2d Cir. 2015)). In reviewing a Rule

12(b)(6) motion, the Court assumes all factual allegations in the complaint to be true and draws

all reasonable inferences in favor of the non-moving party. Peretti v. Authentic Brands Group

LLC, 33 F.4th 131, 137 (2d Cir. 2022).

DISCUSSION.

I.      Nuna's Motion to Dismiss for Lack of Standing Will Be Denied.

        Nuna argues that because it voluntarily recalled the Rava car seat and has

remedied the product's defects, plaintiffs cannot claim an injury in fact, and therefore do not

have either Article III standing or "prudential" standing.[3] But plaintiffs have made non-

conclusory factual allegations about the claimed inadequacy of the recall, and it is well

established that a plaintiff has a concrete injury if she overpaid for a product that did not perform

as promised. Nuna's motion to dismiss for lack of standing will be denied.

        "To establish standing under Article III of the Constitution, a plaintiff must

demonstrate (1) that he or she suffered an injury in fact that is concrete, particularized, and actual

or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely

---

[3] A motion to dismiss on grounds of Article III standing should be brought under Rule 12(b)(1), Fed. R. Civ. P., and not Rule 12(b)(6), as was done here. In this instance, the outcome would be the same under either Rule 12(b)(1) or Rule 12(b)(6).

be redressed by the requested judicial relief." Thole v. U. S. Bank N.A, 590 U.S. 538, 540 (2020). "[O]verpaying for a product results in a financial loss constituting a particularized and concrete injury in fact." John v. Whole Foods Market Grp., Inc., 858 F.3d 732, 736 (2d Cir. 2017); accord Langan v. Johnson & Johnson Consumer Companies, Inc., 897 F.3d 88, 92 (2d Cir. 2018) (plaintiff had Article III standing to bring claim under Connecticut consumer-protection law based on allegation that she paid a premium price based on claim that a product was "natural"); In re Evenflo Co., Inc., Mktg., Sales Practices. & Products Liability Litig., 54 F.4th 28, 35-41 (1st Cir. 2022) (plaintiffs had Article III standing based on claim that they overpaid for a child's car booster seat that allegedly had design defects) (collecting cases).

The injury requirement has "a low threshold, which helps to ensure that the plaintiff has a personal stake in the outcome of the controversy." John, 858 F.3d at 736 (internal citation and quotation marks omitted). "Courts in this Circuit have consistently ruled that plaintiffs satisfy the requirements of Article III standing when they plead that defendants' misrepresentations caused them to purchase a product that they otherwise would not have purchased." Wiggins v. Unilever United States, Inc., 2023 WL 7005147, at *6 (S.D.N.Y. July 26, 2023) (Gardephe, J.) (collecting cases).

Nuna principally relies on Tarsio v. FCA US LLC, 2024 WL 1514211, at *4 (S.D.N.Y. Apr. 8, 2024) (collecting cases), and related authority. In Tarsio, Judge Román concluded at the pleading stage that the plaintiff had not alleged an injury in fact for claims arising from a defective rearview-camera system that was subject to a NHTSA-supervised recall. Id. at *1, 3-6. The recall provided affected consumers like the plaintiff with free repairs and reimbursement for out-of-pocket expenses, thus remedying the defects cited by the plaintiff and obviating any economic loss suffered as a result of the claimed defect. Id. at *4. The plaintiff

also failed to allege any problems with rear-camera functionality after the repair was made.  Id.
Judge Román distinguished the allegations in Tarsio from cases where the plaintiff described an ineffective repair process.  Id. at *5.

The Complaint contains non-conclusory factual allegations that describe deficiencies in Nuna's product recall, and plaintiffs assert that Nuna's misrepresentations about product safety caused them to overpay for a product that does not perform as promised. (Compl't ¶¶ 69-70, 79-82.)  This satisfies the low threshold for alleging Article III standing. John, 858 F.3d at 736.

Nuna's motion to dismiss on grounds of so-called "prudential" standing will also be denied.  Nuna describes this argument as a "corollary" to its argument about Article III standing, and argues that the product recall renders as moot any claim to monetary or equitable relief.  But plaintiffs do not seek equitable or injunctive relief, and, as discussed, plaintiffs have made non-conclusory allegations as to the claimed inadequacies of the Rava recall.

Nuna's motion to dismiss for plaintiffs' lack of standing will be denied.

II.    The Motion to Dismiss Ricardo Moncada's Claims Brought Under Sections 349 and 350 of the New York General Business Law Will Be Denied.

A.  Overview of Sections 349 and 350 of the New York General Business Law.

Plaintiff Ricardo Moncada's brings claims under sections 349 and 350 of the New York General Business Law.  General Business Law section 349(a) states that "[u]nfair, deceptive or abusive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."  Section 350 states that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."  "The standard for recovery under General Business Law § 350, while specific to false advertising, is otherwise identical to section 349."

Goshen v. Mut. Life Ins. Co. of New York, 98 N.Y.2d 314, 324 n.1 (2002).  "Given this overlap, 'courts have found that the scope of § 350 is as broad as that of § 349 . . . and that its essential elements are the same.'"  Duran v. Henkel of Am., Inc., 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020) (Engelmayer, J.) (quoting  Braynina v. TJX Cos., 2016 WL 5374134, at *4 (S.D.N.Y. Sept. 26, 2016) (Failla, J.)).

"Claims under General Business Law §§ 349 and 350 are available to an individual consumer who falls victim to misrepresentations made by a seller of consumer goods through false or misleading advertising.  To state such a claim, a plaintiff must allege that the defendant has engaged in an act or practice that is deceptive or misleading in a material way and that plaintiff has been injured by reason thereof."  Solomon v. Bell Atlantic Corp., 9 A.D.3d 49, 52 (1st Dep't 2004) (quotation marks and internal citations omitted).  "A plaintiff under section 349 must prove three elements: first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act."  Stutman v. Chemical Bank, 95 N.Y.2d 24, 29 (2000).  Claims brought under sections 349 and 350 are not required to meet the heightened pleading standard of Rule 9(b), Fed. R. Civ. P.  Duran, 450 F. Supp. 3d at 346.

B.    The Complaint Plausibly Alleges Misleading Statements of Fact.

Nuna argues that the Complaint does not plausibly allege the existence of a materially misleading statement about the Rava, urging that the marketing statements quoted in the Complaint are non-actionable opinion or examples of advertiser puffery.

"Deceptive or misleading representations or omissions are defined objectively as those likely to mislead a reasonable consumer acting reasonably under the circumstances . . . ."  Solomon, 9 A.D.3d at 52.  Under the General Business Law, non-actionable puffery includes

subjective statements of opinions that cannot be proven false, as well as "exaggerated, blustering and bloating statements" that a reasonable consumer would understand to be hyperbolic. MacNaughton v. Young Living Essential Oils, LC, 67 F.4th 89, 96-97 (2d Cir. 2023) (quotation marks omitted). "Context is crucial" to the analysis, and may require a "fact-intensive inquiry on how a reasonable buyer would be affected," which "typically should not be resolved on a motion to dismiss." Id. at 97-98 (quotation marks omitted). "A court must consider the advertisement in its entirety and not engage in disputatious dissection." Id. at 97 (quotation marks, brackets and ellipsis omitted). However, "[i]t is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." Fink v. Time Warner Cable, 714 F.3d 739, 741 (2d Cir. 2013) (affirming dismissal of section 349 claim where plaintiff did not adequately identify "the specific text of a specific advertisement.").

The Complaint includes screenshots of Nuna's homepage that tout the Rava's safety feature, as well as quotes from online videos published by Nuna. (Compl't ¶¶ 29-33.) Several of the statements quoted by plaintiffs are instances of non-actionable puffery. This includes Nuna's assertion that it makes "premium baby gear" with "timeless" style "expertly engineered for modern life." (Compl't ¶ 29; see also id. ("Enjoy each step, snuggle, and sway along the way with confidence, knowing we've designed around your life."); Compl't ¶ 30 (calling the Rava a "reliable anchor to your child's car-riding adventures and your parental peace of mind" that offers "unwavering security.").) A reasonable consumer would understand labels like "premium," "timeless" and "expertly engineered" to be statements of opinion. See MacNaughton, 67 F.4th at 96-98. Statements about a consumer "[e]njoy[ing] each step, snuggle, and sway," and the Rava being a "reliable anchor" with "unwavering security" similarly communicate an opinion while also using exaggerated language about the product. See id.

- 10 -

But it is plausible that a reasonable consumer would understand as factual statements Nuna's descriptions of its compliance with safety standards and rigorous testing requirements. A screenshot of the Nuna homepage as of April 11, 2021, Nuna stated that the Rava "exceeds American safety standards." (Compl't ¶ 31.) A June 1, 2023 screenshot states: "Our baby gear is extensively tested before it leaves the factory. We use advanced equipment and testing methods, going above and beyond what's required. To ensure compliance with safety standards, we regularly have our gear tested at accredited, independent labs." (Compl't ¶ 32.)

Nuna urges that these statements are non-actionable puffery, citing to Judge Crotty's observation that "'[g]eneral statements about compliance with safety and quality standards are non-actionable 'puffery' where, as here, they fail to identify specific requirements or standards.'" Lee v. Mikimoto (Am.) Co., 2023 WL 2711825, at *5 (S.D.N.Y. Mar. 30, 2023) (quoting Leonard v. Abbott Labs., Inc., 2012 WL 764199, at *22 (E.D.N.Y. Mar. 5, 2012) (Spatt, J.)). But Lee addressed a very different factual context, where a pearl seller claimed to "only use the finest pearls that meet the strictest standards . . . ." Id. at *2. The plaintiff asserted that this language would cause a reasonable consumer to infer that defendant's pearl products contained at least one millimeter of nacre coating. Id. at *5. Judge Crotty concluded that the reference to pearls meeting "the strictest standards" was too vague to be actionable, especially when contrasted to a competitor who specified that its pearls met the standards of the Gemological Institute of America. Id.

Nuna's statements about exceeding "American safety standards," "compliance with safety standards" and utilizing an extensive testing process are different than the statement at issue in Lee. At the pleading stage, it is plausible that a reasonable consumer encountering

Nuna's statements would understand the company to be asserting that the Rava was subject to thorough and vigorous testing that exceeded safety standards required by law.  That Nuna's marketing statements did not cite a governing statute or regulation does not make it less plausible that a consumer would understand Nuna to be making a verifiable statement of fact about the Rava's safety compliance and product-testing regimen.  Those statements require "a fact-intensive inquiry on how a reasonable buyer would be affected" and "should not be resolved on a motion to dismiss."  MacNaughton, 67 F.4th at 98.

Nuna also relies upon Harris v. Pfizer, 586 F. Supp. 3d 231, 243-44 (S.D.N.Y. 2022), in which Judge Cote dismissed section 349 and 350 claims asserting that defendant failed to list a carcinogenic contaminant as an active ingredient in its smoking-cessation product. Judge Cote explained that the complaint did not identify any misleading statement about the contaminant, explaining that the statutes did not give rise to claims "just because [plaintiff] comes away from an advertisement with an incorrect impression" and that the "impression must be reasonably traceable to a misleading statement from the defendant."  Id.  Unlike the Harris plaintiff, the Complaint here identifies specific factual statements that are alleged to have been materially misleading.

Nuna's motion to dismiss the section 349 and 350 claims will be granted as to the non-actionable puffery quoted above and denied as to statements about exceeding American safety standards and utilizing advanced testing methods.

C.  The Complaint Does Not Plausibly Allege an Omission-Based Claim.

To the extent that the Complaint asserts that Nuna is liable under section 349 and 350 for knowing about but failing to disclose "grave risks" about the Rava product (Compl't ¶ 55), any such claim will be dismissed.  To the limited extent that the Complaint references any

alleged material omission, it appears to cite Nuna's purported knowledge of consumer complaints filed with NHTSA and posted on Reddit.  (Compl't ¶¶ 53-55.)

Section 349 allows for omission-based liability where "the business alone possesses material information that is relevant to the consumer and fails to provide this information" and considers "whether plaintiffs possessed or could reasonably have obtained the relevant information they now claim the [defendant] failed to provide."  Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 26-27 (1995); see also Paradowski v. Champion Petfoods USA, Inc., 2023 WL 3829559, at *2 (2d Cir. June 6, 2023) (summary order) (quoting Oswego).

Reddit's message boards are available to the public and elsewhere the Complaint alleges that the NHTSA consumer complaints were publicly posted.  (Compl't ¶ 37.)  The Complaint does not point to any information about problems with the Rava harness that was known to Nuna alone and cites entirely to public information that would have been accessible to any consumer, including Ricardo Moncada.  The Court therefore concludes that the Complaint does not plausibly allege an omission-based claim under the General Business Laws.

D.  The Complaint Plausibly Alleges Causation.

Nuna also argues that Ricardo Moncada's claims should be dismissed because she does not specify that she had knowledge of the alleged misrepresentations quoted in the Complaint.

To prevail under GBL sections 349 and 350, the plaintiff "must show that the defendant's 'material deceptive act' caused the injury."  Stutman v. Chem. Bank, 95 N.Y.2d 24, 29 (2000).  The plaintiff must allege awareness of the actionable misstatement.  Gale v. Int'l Bus. Machines Corp., 9 A.D.3d 446, 447 (2d Dep't 2004) ("If the plaintiff did not see any of these

- 13 -

statements, they could not have been the cause of his injury, there being no connection between the deceptive act and the plaintiff's injury"). While a plaintiff must allege causation, "reliance is not an element of a section 349 claim." Stutman, 95 N.Y.2d at 30 (emphasis in original).

The Complaint asserts that prior to buying the Rava product, Ricardo Moncada "visited the Nuna website where she read safety and other product information." (Compl't ¶ 64.) "Through this process, Ms. Ricardo Moncada read and relied on Defendant's advertising and marketing materials, including its representation that the Product was known for its safety and high quality." (Compl't ¶ 65.) Notably, one of the screenshots included in the Complaint reflects that on June 1, 2023, the Nuna homepage stated that "[o]ur baby gear is extensively tested before it leaves the factory," that Nuna "use[s] advanced equipment and testing methods, going about and beyond what's required. To ensure compliance with safety standards, we regularly have our gear tested at accredited, independent labs." (Compl't ¶ 32.) Given that Ricardo Moncada bought the Rava seat in July 2023, it is plausible that she saw these fact-based statements when visiting the Nuna website. The Court concludes that the Complaint plausibly alleges that she had knowledge of Nuna's alleged misrepresentations and therefore has alleged causation. See Goldemberg v. Johnson & Johnson Consumer Companies, Inc., 8 F. Supp. 3d 467, 480 (S.D.N.Y. 2014) (complaint supported the "reasonable inference" that plaintiff saw defendant's website and Facebook page prior to purchasing the products at issue) (Román, J.).

E.  The Complaint Plausibly Alleges Injury under the Price-Premium Theory.

Lastly, the Complaint plausibly alleges that Ricardo Moncada was injured because she paid a premium price for a product that does not function as advertised. GBL sections 349 and 350 recognize an injury when a plaintiff pays a premium price due to a material misrepresentation about product quality. As explained by the Second Circuit, "[o]ne method of

demonstrating actual injury in the consumable goods context is by showing that the plaintiff paid a 'price premium' – that is, as a result of the defendant's deception, the plaintiff paid more for a product than he otherwise would have." Eidelman v. Sun Prods. Corp., 2022 WL 1929250, at *1 (2d Cir. June 6, 2022) (summary order). "This connection often takes the following form: A plaintiff alleges that a company marketed a product as having a 'unique quality,' that the marketing allowed the company to charge a price premium for the product, and that the plaintiff paid the premium and later learned that the product did not, in fact, have the marketed quality." Duran, 450 F. Supp. 3d at 350.

"The presence or absence of a price premium attributable to a defendant's alleged deception is objective and does not depend on whether a plaintiff could have or would have, in fact, purchased a lower-priced, truthfully marketed alternative." Eidelman, 2022 WL 1929250, at *1. A plaintiff need not identify the prices of comparable products in order to assert that the product sold at a premium price. Duran, 450 F. Supp. 3d at 352. "The central question therefore is whether the higher price can be attributed, in whole or in part, to [defendant's] advertising statement." Eidelman, 2022 WL 1929250, at *2; see also Newman v. Bayer Corp., 695 F. Supp. 3d 469, 478 (S.D.N.Y. 2023) (assertion that plaintiff would have paid less for gummy vitamin product but-for false representation that consumers needed to take only one gummy per day to receive full nutritional benefit was sufficient to allege a price-premium theory of injury) (Karas, J.); Duran, 450 F. Supp. 3d at 351 (plaintiff plausibly alleged price-premium injury based on styling gel's "no flakes" representation).

Ricardo Moncada asserts that she paid a premium price for the Rava based on representations about its safety features and high quality, and that if she had known about the product's defects, she either would not have purchased the Rava or would have paid substantially

less for it.  (Compl't ¶¶ 65, 70.)  She also alleges that although the seat initially functioned as expected, she now has "challenges" adjusting the harness, "which often sticks in position." (Compl't ¶ 66.)  Nuna argues that this problem is different from the loosened harness subject to the product recall, but the nature of the claimed harness defect is better addressed after discovery.

Further, the Recall Notice instructed that "[a]ll owners of RAVAs manufactured before October 25, 2023 should request the Remedy Kit to ensure your car seat's harness adjuster is kept clean and working properly."  (Compl't Ex. A.)  Nuna's memorandum observes in a different context that "all Rava owners were encouraged to request the Remedy Kit; the remedy was not limited to customers who experienced issues with their Ravas."  (Def. Mem. at 15 (emphasis in original).)  The Complaint also asserts that Nuna encourages consumers to "routinely" conduct the prescribed Harness Function Test in order "to make sure the harness is secure . . . ."  (Compl't ¶¶ 40, 46.)  For the purpose of alleging a price-premium theory of injury, the instruction that all owners should routinely conduct the Harness Function Test and undertake the self-repair steps provided in the Remedy Kit is consistent with Ricardo Moncada's claim that she paid a premium price for a product that does not function as advertised.

Nuna's motion to dismiss Ricardo Moncada's claim for failure to allege injury will be denied.

F.  Nuna's Supplemental Submissions of Authority
     Have Limited Persuasive Value.

The Court has considered Nuna's supplemental submissions from two other cases involving the Rava product, as well as plaintiffs' letter in response.  (ECF 33-35.)  Given that they involve different plaintiffs, different pleadings and different substantive laws, they are of limited persuasive value.

First, Nuna has submitted a minute entry from <u>In re: Nuna Baby Essentials Rava Litigation</u>, 25-cv-1284 (N.D. Cal.) (AMO), which dismissed with leave to replead various claims brought under California law. (ECF 33.) The basis for dismissal is unclear and Nuna does not explain whether or how any of the claims in that case are analogous to the claims here. The transcript for the proceeding memorialized by the minute entry is not available on the public docket.

Nuna separately filed the transcript from an oral argument in <u>Roberts v. Nuna Baby Essentials Inc.</u>, 25-cv-2209 (W.D. Wash.) (KKE), during which Judge Evanson dismissed four of five claims with leave to replead. (ECF 34.) The transcript reflects that Judge Evanson denied the motion to dismiss a false advertising claim brought under Washington's consumer protection statute, stating that "[p]laintiff's allegation that the recall is inadequate and ineffective are adequate to state such a claim." (Tr. 35 (ECF 34-2).) The underlying allegations on that surviving claim appear to be broadly analogous to Ricardo Moncada's claims brought under the New York General Business Law. (<u>See</u> 25-cv-2209 (W.D. Wash.) ECF 1-2 ¶¶ 154-66.)

For both actions, the similarities and differences with this action are not readily apparent and have not been meaningfully explained by the parties. Given that these cases are brought by different plaintiffs and invoke the laws of different states, the Court affords limited weight to Nuna's supplemental submissions.

III.    Dukler's Claim Asserting Breach of the Implied
Warranty of Merchantability Will Be Dismissed.

Plaintiff Dukler asserts that Nuna breached the implied warranty of merchantability because the Rava is not fit for its intended and ordinary use as a child-restraint system. N.Y. UCC § 2-314. Without elaboration, the Complaint asserts that Dukler notified

Nuna of the Rava's defect within a reasonable amount of time of discovering the breach. (Compl't ¶ 119.)

Because the Complaint does not plausibly allege that Dukler gave Nuna notice of the claimed breach, which is a condition precedent for her claim, the claim will be dismissed.

Section 2-607(3)(a) of the New York version of the Uniform Commercial Code requires that "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." See also MacNaughton, 67 F.4th at 100 ("in order to assert a claim for breach of an express or implied warranty under New York law, a buyer must provide the seller with timely notice of the alleged breach.") (quotation marks and brackets omitted).  "Although it is true that an exception to the notice requirement exists for cases where a plaintiff is a retail customer of a product intended for human consumption, this exception applies only in circumstances where a party alleges a physical, in addition to economic, injury." Kandel v. Dr. Dennis Gross Skincare, LLC, 721 F. Supp. 3d 291, 306 (S.D.N.Y. 2024) (Ramos, J.); accord Lugones v. Pete & Gerry's Organic, LLC, 440 F. Supp. 3d 226, 244-45 (S.D.N.Y. 2020) (Failla, J.).[4]  "A plaintiff must give 'pre-litigation notice' because 'timely notice is a condition precedent to bringing an action for breach of warranty.'"  Clemmons v. Upfield US Inc., 667 F. Supp. 3d 5, 21 (S.D.N.Y. 2023) (quoting Lugones, 440 F. Supp. 3d at 244-45).

Dukler argues that she provided sufficient notice of her claim when she ordered a Remedy Kit and supplied Nuna with her car seat model and serial number.  (Opp. Mem. 22.) She also points to an allegation that she attempted to call Nuna customer service to complain but was unable to reach a human.  (Compl't ¶ 79.)  It is true that a breach notice need not conform to

---

[4] Both plaintiffs allege only economic injury and do not claim that the Rava's defects have caused physical injury.

any specific format.  See, e.g., Campbell v. Bradco Supply Co., 194 A.D.3d 143, 150 (2d Dep't 2021) ("the plaintiff's repeated complaints and requests for the defendants to remedy the non-conformities in the cabinets were sufficient to preserve the plaintiff's right to sue for damages").  But Dukler does not explain how her request for a Remedy Kit could have given Nuna notice of the claimed breach.  Nuna advised all owners of Ravas manufactured before October 25, 2023 to request a Remedy Kit.  (Compl't Ex. A.)  It is not plausible that Nuna would have understood that a consumer was noticing a breach of implied warranty merely by complying with the company's recommended course of action.

Alternatively, Dukler argues that the commencement of this action itself gave Nuna notice of the breach, citing Panda Capital Corp. v. Kopo International, Inc., 242 A.D.2d 690, 692 (2d Dep't 1997).  For the reasons largely explained by the undersigned in Clemmons, 667 F. Supp. 3d at 20-21, the reasoning of Panda Capital does not apply here.  In Panda Capital, the "plaintiff had repeatedly made its objections to [defendant's] pattern of deficient performance known" prior to bringing suit, which, combined with the pleadings, presented "at the very least an issue of fact" as to whether plaintiff gave reasonably timely notice of breach.  242 A.D.2d at 692.  Panda Capital does not support the proposition that the filing of a complaint alone satisfies the pre-suit notice requirement of section 2-607(3)(a), and Dukler's request of a Remedy Kit is not analogous to the repeated objections referenced in Panda Capital.

Because Dukler does not plausibly allege that she provided the pre-suit notice required under New York law, her claim for breach of the implied warranty of merchantability will be dismissed.

CONCLUSION.

Defendant's motion to dismiss based on Article III and prudential standing is DENIED.  Defendant's motion to dismiss plaintiff Ricardo Moncado's claims brought under New York General Business Law sections 349 and 350 is GRANTED in part as to the identified statements of non-actionable puffery and otherwise DENIED.  Defendant's motion to dismiss plaintiff Dukler's claim for breach of the implied warranty of merchantability is GRANTED. The Clerk is directed to terminate the motion.  (ECF 28.)

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
March 30, 2026