**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

ELIANA RICARDO MONCADA and MARIYA DUKLER, on behalf of themselves and others similarly situated,

Plaintiffs,

25-cv-2592 (PKC)

-against-

NUNA BABY ESSENTIALS, INC.,

Defendant.

**STIPULATED [PROPOSED] ORDER GOVERNING**
**THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION**

# TABLE OF CONTENTS

**Page(s)**

1. DEFINITIONS ........ 1

2. PURPOSE ........ 2

3. COOPERATION ........ 3

4. LIAISON ........ 3

5. PRESERVATION AND NON-DISCOVERABLE INFORMATION ........ 3

6. SEARCH ........ 4

7. PRODUCTION FORMATS ........ 7

8. PRODUCTION OF DOCUMENTS ORIGINATING AS PAPER ........ 7

9. PHASING ........ 7

10. DOCUMENTS PROTECTED FROM DISCOVERY ........ 7

11. THIRD PARTY DOCUMENTS ........ 9

12. MODIFICATION ........ 10

APPENDIX A: PRODUCTION FORMAT FOR HARD COPY DOCUMENTS ........ 13

APPENDIX B: PRODUCICITON FIELDS FOR HARD COPY DOCUMENTS ........ 16

APPENDIX C: PRODUCTION FORMAT FOR ELECTRONICALLY STORED INFORMATION ........ 17

APPENDIX D: REQUIRED METADATA FIELDS FOR ESI ........ 24

Plaintiffs Eliana Ricardo Moncada and Mariya Dukler ("Plaintiffs") and Defendant Nuna Baby Essentials, Inc. ("Defendant"), through their counsel, hereby agree to this Stipulated Order Governing the Production of Electronically Stored Information and Hard Copy Documents Re Discovery of Electronically Stored Information ("ESI Order") in the above-captioned action (the "Action" as defined below).

The Parties stipulate and agree as follows:

**1. DEFINITIONS**

a. "Action" means the above-captioned action, *Moncada, et al. v. Nuna Baby Essentials, Inc.*, Case No. 1:25-cv-2592.

b. "Confidentiality Designation" means the designation of "Confidential" or "Attorneys' Eyes Only" stamped on Discovery Material as defined by, and subject to, the terms of the Parties' [Proposed] Stipulated Protective Order ("Stipulated Protective Order").

c. "Discovery Material(s)" means anything produced or provided by any Producing Party to a Receiving Party in connection with this Action, including, but not limited to, both ESI and hard copy documents.

d. "Document" carries its broadest meaning consistent with Fed. R. Civ. P. 34 and includes ESI and hard copy material. A draft or non-identical copy is a separate Document within the meaning of this term.

e. "ESI" means electronically stored information and shall have the same meaning and scope as provided in Fed. R. Civ. P. 34(a) and Fed. R. Evid. 1001.

f. "Hard-Copy Document(s)" means Documents that exist in paper form at the time of collection.

g. "Metadata" refers to application and system information of a file that contains data

about the file, as opposed to describing the content of a file, as the term is described and used in "The Sedona Conference Glossary: EDiscovery and Digital Information Management," Fifth Ed., February 2020.

h. "Native" or "Native Format" means and refers to an electronic document's associated file structure defined by the original creating application. For example, the native format of an Excel workbook is a .xls or .xslx file.

i. "Parties" collectively shall mean all parties to this Action, including any party added or joined to any complaint in these Proceedings, as well as named parties to actions that may be consolidated into or coordinated with the above-captioned Action.

j. "Producing Party" means any Party or third-Party to this Action who produces documents or ESI pursuant to any discovery request, subpoena, or otherwise.

k. "Receiving Party" means a Party or third-Party to this Action who receives documents or ESI from a Producing Party in response to a discovery request, subpoena, or otherwise.

l. To the extent a technical term is not defined herein, the Parties may look to the "The Sedona Conference Glossary: E-Discovery and Digital Information Management," Fifth Ed., February 2020, for guidance relating to the definition of those terms.

m. [Reserved.]

**2. PURPOSE**

This ESI Order will govern discovery of ESI in this Action as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules. To the extent additional obligations or rights not addressed in this ESI Order arise under the Federal Rules of Civil Procedure, the Court's

Local Rules, or any other applicable state and federal statutes, orders and rules, they shall be controlling.

**3. COOPERATION**

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

**4. LIAISON**

The Parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The Parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

**5. PRESERVATION AND NON-DISCOVERABLE INFORMATION**

The Parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate, including Metadata identified in **Appendix D**. The Parties will meet and confer regarding the scope of preservation, including custodians, data sources, date ranges, and categories of information that have been or should be preserved in connection with this Action. The Parties will timely make disclosures regarding custodians, data sources, date ranges, and categories of information to be preserved, as are necessary to facilitate the Parties' meet and confer discussions. By preserving or producing information for the purpose of this Action, the Parties are not conceding that such material is discoverable.

The Parties agree that the following sources of potentially relevant information do not need to be preserved because the source is not reasonably accessible and therefore, not discoverable, and should not be preserved:

a. Deleted, slack, fragmented, or other data only accessible by forensics.

b. Random access memory ("RAM"), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

c. On-line access data such as temporary internet files, history, cache, cookies, and the like.

d. Data in Metadata fields that are frequently updated automatically, such as last-opened dates.

e. Back-up and archive data that are substantially duplicative of data that are more accessible elsewhere.

f. Data remaining from systems no longer in use that is unintelligible on the systems in use or cannot be accessed by using systems currently in use by the party.

g. Electronic data (e.g., email, calendars, contact data, and notes) sent to or from mobile devices (e.g., iPhone, iPad, Android devices), provided that a copy of all such electronic data is automatically saved in real time elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

**6. SEARCH**

The Parties agree that they will meet and confer in good faith about search methodology used to identify ESI that each Party will collect and review for potential production and filter out ESI that is not subject to discovery. More specifically, the Parties will meet and confer and attempt in good faith to reach agreement regarding the following: (i) the identity of custodians who may

have discoverable ESI; (ii) the number of custodians from whom ESI should be searched; and (iii) the search terms, phrases, or parameters to be used in searching for responsive ESI; and (iv) if Technology Assisted Review ("TAR") is to be used, the parameters of the TAR model, including the prior application of search terms and the criteria for evaluating and accepting the results of the TAR model. Agreement on a search methodology does not relieve a party of its obligation to conduct a reasonable search, review, and production of responsive, non-privileged documents of which a party is aware and within their possession, custody, or control, regardless of whether they contain search terms or some other search methodology agreed to by the parties or ordered by the Court.

**Search Terms Hit Report ("STHR")**. Should there be a dispute as to whether a proposed search term would be unduly burdensome, the Receiving Party may request that the Producing Party provide a STHR in Excel (or other format as agreed to by the producing and receiving Parties). The STHR will include: (a) number of documents hit by the search term with separate hits for individual documents hit vs. documents hit including families, (b) unique documents hit by each search term, and (c) the total number of documents hit with and without families.

**De-Duplication**. Each Party is required to produce only a single copy of a responsive document and each Party may globally de-duplicate responsive ESI (e.g., based on MD5 or SHA1 hash values at the document level) across Custodians. For emails with attachments, the hash value is generated based on the parent/child document grouping, respecting differences in families (i.e., two duplicates attached to different emails will both be provided). The hash value will take into account the document's text and intrinsic metadata (e.g., author, date created, etc.), but not extrinsic metadata values (e.g., custodian). In deduplicating, all custodians where identical copies of a document were found will be identified in the ALLCUSTODIAN(S) metadata field, identifies

the additional file paths in an ALLPATHS metadata field, and an email that includes content in the BCC or other blind copy fields shall not be treated as a duplicate of an email that does not include content in the BCC or other blind copy field, even if all remaining content in the email is identical.

Standalone files may be de-duplicated against other stand-alone files, but not against attachments contained in document families.

To the extent that de-duplication through MD5 hash values is not possible, the Parties shall meet and confer to discuss any other proposed method of de-duplication.

**Common System Files**. Each Party will use its best efforts to filter our common system files and application executable files by using a commercially reasonable hash identification process. For example, Hash values may be filtered out during this process using the National Software Reference Library ("NSRL") NIST hash set list.

**Email Threading**. Where multiple email messages are part of a single chain or "thread," a party is only required to produce the most inclusive message ("Last In Time Email") and need not produce earlier, less-inclusive email messages or "thread members" that are fully contained, including attachments and including identical senders and recipients, within the Last In Time Email. For the avoidance of doubt, only email messages for which the parent document and all attachments are contained in the Last In Time Email will be considered less inclusive email messages that need not be produced. If the later in time message contains *different* text (such as where the later message adds in-line comments to the body of the earlier message), the earlier message must be produced. Email thread suppression shall not eliminate the ability of the Receiving Party to identify every custodian who had a copy of the produced document or email.

In the event that TAR is used in accordance with this ESI Order, the Parties agree that

email threading may not be used until after the TAR process is complete.

**7. PRODUCTION FORMATS**

The Parties agree to produce documents in the formats described in Appendices A and C to this ESI Order. If particular documents warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of such documents. The Parties agree not to degrade the searchability of documents as part of the document production process.

**8. PRODUCTION OF DOCUMENTS ORIGINATING AS PAPER**

The production format specifications for Hard Copy documents are set forth in Appendix A.

**9. PHASING**

When a Party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the Parties agree to meet and confer in good faith to discuss the timing of production of ESI, including, if appropriate, phasing of productions on a rolling basis.

**10. DOCUMENTS PROTECTED FROM DISCOVERY**

a. Pursuant to Fed. R. Evid. 502(d), the production or disclosure of any privileged or work-product-protected Document or accompanying Metadata, whether inadvertent or otherwise, does not result in a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding. A Producing Party must assert privilege or protection over produced documents or information promptly after a Producing Party discovers that it produced a Protected Document by notifying the Receiving Party in writing of the assertion or privilege protection. The Receiving Party shall have the right to challenge both the timing and claim of

privilege or protection of any such later-discovered designation and must do so within ten (10) business days of the Producing Party's designation. Until the Court resolves the dispute regarding the timing of the later-discovered designation or the claim of privilege or protection, the Receiving Party must return or destroy ESI or Hard Copy documents, that the Producing Party claims is privileged or work product as provided in Rule 26(b)(5)(B) and may not use such ESI for any purpose.

b. The following documents presumptively need not be included on a privilege log:

i. Communications exclusively between a Party and its outside counsel which post-date the filing of the initial complaint in the related case *Khanna, et al. v. Nuna Baby Essentials, Inc.*, N.D. Cal. Case No. 3:25-cv-01284 AMO (the "*Khanna* Action").

ii. Work product created by outside counsel, or by an agent of outside counsel other than a Party, testifying expert, or third-party vendor, created after the filing of the *Khanna* Action.

iii. Redacted emails need not be logged as long as the objective Metadata (unless the privilege or protection is contained in these fields) is not redacted, and the reason for the redaction, including the nature of the privilege asserted, is noted on the face of the document. For redacted documents where the subject matter is not decipherable because of the redactions, a description of the contents that is sufficient to understand the subject matter of the document may be requested. Non-email documents need not be logged if the reason for the redaction is noted on the face of the document in the redacted area.

c. The Parties agree to meet and confer in good faith regarding whether certain communications may be identified on a privilege log by category, rather than individually, if appropriate.

d. A metadata privilege log shall identify for each claimed privileged document: (1) a unique document identifier; (2) Custodian of the document (3) the date of the document (using sent date for emails) and providing the date created and date last modified for documents); (4) the author of the document; (5) all recipients of the document (for emails, separately listing the To, CC, and BCC recipients); (6) the subject line of an email or file name, unless it contains or reflects privileged or protected information; and (7) the claimed basis for withholding the document. Additional information and description shall only be provided if metadata is "insufficient" for evaluating privilege claims.

e. Parties agree to log only Last in Time Emails in a thread and need not log earlier, less inclusive email messages or "thread members" that are fully contained within the Last in Time Email. An email thread may be logged as a single entry and Parties utilizing email threading for production need not include metadata for suppressed emails on their privilege logs.

f. Except as provided above in Sections 9(b)-(e), the Parties agree to furnish privilege logs that comply with Fed. R. Civ. P. 26(b)(5) and any other legal requirements for all documents withheld or redacted on the basis of attorney-client privilege, attorney work product, or any other applicable privilege or immunity. The Parties agree to meet and confer in good faith regarding the timing of the production of privilege logs.

g. Nothing in this Order requires disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The Parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents and ESI.

**11. THIRD PARTY DOCUMENTS**

A Party that issues a non-party subpoena ("Issuing Party") shall include a copy of this ESI

Order with the subpoena and state that the Parties to the Action have requested that third-parties produce documents in accordance with the specifications set forth herein. The Issuing Party shall promptly notify the other Parties when it receives non-party productions, and shall provide copies of such productions to the other parties in the format in which they were received from the third-party within five business days. In the event that the format of a third-party production does not conform with the specifications set forth herein, the Parties shall meet and confer regarding the format of production to Receiving Parties. Nothing in this ESI Order is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or third parties to object to a subpoena.

**12. MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

**IT IS SO STIPULATED.**

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

DATED: June 17, 2026

By: /s/ Leigh Smith
Jeffrey I. Carton
Catherine Friesen
Leigh Smith
**DENLEA & CARTON LLP**
2 Westchester Park Drive, Suite 410
White Plains, New York 10604
Tel.: (914) 331-0100
Fax: (914) 331-0105
jcarton@denleacarton.com
cfriesen@denleacarton.com
lsmith@denleacarton.com

*Attorneys for Plaintiffs*
*And the Proposed Class*

DATED: June 29, 2026

By: /s/ David S. Osterman

David S. Osterman
**GOLDBERG SEGALLA LLP**
301 Carnegie Center Drive, Suite 200,
Princeton, NJ 08540
Tel.: (609) 986-1310
Fax: (609) 986-1301
dosterman@goldbergsegalla.com

James D. Macri
**GOLDBERG SEGALLA LLP**
665 Main Street
Buffalo, NY 14203
Tel.: (716) 566-5400
Fax: (716) 566-5401
jmacri@goldbergsegalla.com

Robert A. Mantel
**CROWELL & MORING LLP**
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Tel.: 212.509.5439
Fax: 212.233.4134
RMantel@crowell.com

Valerie M. Goo (*pro hac vice)*
**CROWELL & MORING LLP**
515 South Flower Street, 41st Floor
Los Angeles, CA 90071
Tel.: 213.622.4750
Fax: 213.622.2690
VGoo@crowell.com

Scott L. Winkelman (*pro hac vice)*
**CROWELL & MORING LLP**
1001 Pennsylvania Avenue, NW
Washington, DC 20004
Tel.: 202.624.2500
Fax: 202.628.5116
SWinkelman@crowell.com

*Attorneys for Defendant Nuna Baby Essentials, Inc*

PURSUANT TO STIPULATION, ITS IS SO ORDERED.

DATED: ______________________ ______________________________
United States District Court Judge

## APPENDIX A: PRODUCTION FORMAT FOR HARD COPY DOCUMENTS

The following production specifications apply to documents that existed in paper format at collection and prior to production (i.e., "Hard Copy Documents"). Documents that originated as paper but which were scanned and maintained electronically by a Party prior to inception of this Action shall be produced in accordance with Appendices A and B of this ESI Protocol. The Parties agree to produce Hard Copy Documents in the formats described below, to the extent reasonably practicable and not unduly burdensome. These formats are deemed to be productions in reasonably usable form. If a Producing Party intends to produce any Hard Copy Documents in any manner other than as specified herein, the Producing Party shall notify the Receiving Party of its intent, including production format (e.g., produced as paper, made available for inspection). If the proposed production format is not acceptable to the Receiving Party, the Parties shall meet and confer to determine a mutually acceptable production format for such Hard Copy Documents.

a. **TIFFs.** Hard Copy Documents should be scanned as single-page, black and white, Group IV compression TIFF images using a print setting of least 300 dots per inch (DPI). Bates numbers, confidentiality designations (in accordance with the Stipulated Protective Order governing this Action), and redactions (to the extent they are necessary) should be burned into the image. TIFF image files should be provided in an "Images" folder.

b. **Unitizing Documents**. The parties shall undertake reasonable efforts to ensure that, in scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized). For example, documents stored in a binder, folder, or similar container (each a "container") should be produced in the same order as they appear in the container. The front

cover of the container should be produced immediately before the first document in the container. The back cover of the container should be produced immediately after the last document in the container.

c. **Hard Copy Documents Parent-Child Relationships**. The Parties agree that if any part of a Hard Copy Document or its attachments is responsive, the entire document and attachments must be produced, except for any attachments that may be withheld or redacted on the basis of any privilege or work-product or other protection. The Parties shall take reasonable steps to ensure that parent-child relationships within a document family (the association between an attachment and its parent document) are preserved. A Party is not required to generate information to reconstruct any family groups to the extent such information is not present at the time of collection of the Hard Copy documents. The attachment(s) shall be produced adjacent to the parent document, in terms of Bates numbers, with the first attachment being named with the next sequential number after the parent, and any additional attachment(s) sequentially numbered after that first attachment.

d. **OCR.** Hard Copy Documents shall be run through optical character recognition ("OCR") software, and the full text shall be provided on a document-level in an appropriately formatted text file (.txt) that is named to match the first Bates number of the document. Text files should be provided in a "Text" folder. To the extent that a Hard Copy document is redacted, the text files should not contain the text of the redacted portions.

e. **Unique IDs**. Each TIFF image should have a unique filename, which corresponds to the Bates number of that page. The filename should not contain any blank spaces and should be zero-padded (e.g., ABC-000001), taking into consideration the estimated number of pages to be produced. If a Bates number or set of Bates numbers is skipped in a production, the Producing

Party will so note in a cover letter or production log accompanying the production or as soon as practicable thereafter. Bates numbers will be unique across the entire production and prefixes will be consistent across all documents a Party produces in the Action.

f. **Data Load Files**. Hard Copy Documents should be produced with the same Data Load File as set forth in Appendix C.a. below for ESI.

g. **Metadata.** Each of the Metadata and coding fields set forth in Appendix B shall be produced for that Hard Copy Document to the extent reasonably available.

h. **Color.** Hard Copy Documents containing color need not be produced in color in the first instance, provided however, that the Producing Party shall retain a copy of such produced Hard Copy documents in color. However, if color is necessary to understand the meaning or content of the Hard Copy document/s, then the Hard Copy documents shall be produced in color using single-page JPEG format (300 DPI). If other good cause exists for the Receiving Party to request production of certain Hard Copy documents in color, the Receiving Party may request production of such Hard Copy documents in color by providing a list of the Bates numbers of documents it requests to be produced in color format. The Producing Party shall not unreasonably deny such requests.

j. [**Reserved**.]

## APPENDIX B: PRODUCTION FIELDS FOR HARD COPY DOCUMENTS

1. The load files accompanying scanned Hard-Copy (paper) documents will include the following objective coding fields, to the extent reasonably applicable:

| Field Name | Field Description |
|---|---|
| BEGBATES | Beginning Bates number as stamped on the production image |
| ENDBATES | Ending Bates number as stamped on the production image |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| PRODVOL | Production volume |
| ALLCUSTODIAN(S) | Individual(s) from whom the document was obtained and de-duplicated out during global de-duplication |
| CONFIDENTIALITY | Confidentiality designation assigned to the document |
| TEXTFILEPATH | Path to extracted text/OCR file for document |
| HASHVALUE | MD5 hash value of document |
| PAGE COUNT | Page Count or an Image Count, if auto generated |
| ATTACHCOUNT | Count of attachments files |
| ATTACHNAMES | Filenames for attachments |
| REDACTIONS | Indicate Yes/No if document redacted |

# APPENDIX C: PRODUCTION FORMAT FOR ELECTRONICALLY STORED INFORMATION

a. **Production Components**. Except as otherwise provided below, ESI shall be produced in accordance with the following specifications:

i. an ASCII (or UTF8) delimited data file (.DAT) using Concordance standard delimiters; Field Delimiter = ASCII (020), Text Quote = "þ" ASCII (254), Multi-Entry = ";" ASCII (059), New Line ® (174). First row will contain data header fields. Image file names should match the page identifier for that specific image and end with the .TIF or .JPG extension. Example: ABC-0000001.TIF or ABC-0000001.JPG.

ii. an image load file (.OPT) that can be loaded into commercially acceptable production software (e.g., Concordance or Relativity);

iii. TIFF images; and

iv. Document level .TXT files for all documents containing extracted full text or OCR text (**"Text Files")**. A single multi-page text file shall be provided for each document, and the filename should match its respective TIFF filename. When possible, the text of native files should be extracted directly from the native file. Text files will not contain the redacted portions of the documents. A commercially acceptable technology for optical character recognition "OCR" shall be used for all scanned hard copy documents and for documents with redactions.

If any Party contends that a particular document/s or ESI warrants a different production format, the Parties will cooperate in good faith to meet and confer to determine a mutually acceptable production format for such documents.

b. **Unique IDs.** Each image should have a unique filename, which corresponds to the Bates number of that page. The filename should not contain any blank spaces and should be zero-padded (e.g., ABC-000001), taking into consideration the estimated number of pages to be

produced. If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production or as soon thereafter as practicable. Bates numbers will be unique across the entire production and prefixes will be consistent across all documents a party produces in this Action.

c. **Parent-Child Relationships.** Parent-child relationships will be maintained in production. The Parties agree that if any part of an email or its attachments is responsive, the entire email and attachments may be produced, except any email or attachments that must be withheld or redacted on the basis of privilege or work-product protection. The Parties shall take reasonable steps to ensure that parent-child relationships within a document family (the association between an attachment and its parent document) are preserved, including any attachments to emails subsumed within an email thread. The child-document(s) should be consecutively produced immediately after the parent-document. Each document shall be produced with the production number for the first and last page of that document in the "BegBates" and "EndBates" fields of the data load file and with the "BegAttach" and "EndAttach" fields listing the production number for the first and last page in the document family.

d. **TIFFs.** Documents that exist only in hard copy format shall be scanned and produced as TIFFs. Documents that exist as ESI shall be converted and produced as TIFFs, except as provided below. The parties shall take reasonable efforts to process presentations (e.g., MS PowerPoint) with hidden slides and speaker's notes unhidden, and to show both the slide and the speaker's notes on the TIFF image. Unless excepted below, single page, black and white, Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Each TIFF image shall be named according to a unique corresponding Bates number associated with the document. Each image shall be branded according to the Bates number and the agreed upon confidentiality

designation. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). Where the TIFF image is unreadable or has materially degraded the quality of the original, the producing party shall provide a higher quality TIFF image or the native or original file.

e. **Color**. Documents not produced in native format containing color need not be produced in color in the first instance. However, if good cause exists for the Receiving Party to request production of certain documents in color, the Receiving Party may request production of such documents in color by providing a list of the Bates numbers of documents it requests to be produced in color format. The Producing Party shall not unreasonably deny such requests. The Parties reserve the right to allocate costs of color productions if they become burdensome.

f. **Native Format**. Spreadsheets (e.g., MS Excel) will be produced in native format. To the extent that they are produced in this action, PowerPoints, presentation files, access database files, and multi-media files that cannot be converted to image files, and electronic information containing audio or video components should be produced in native format. Native files will be produced with a link in the NATIVEFILEPATH field, along with extracted text (where extracted text is available) and applicable metadata fields set forth in Appendix D below. A Bates numbered TIFF placeholder indicating that the document was "Produced in Native Format Only" must accompany every native file.

g. **Redaction of Native Files**. Spreadsheets shall be redacted in native format using eDiscovery industry best practices. The natively redacted file shall be produced as an xls(x) native file.

h. **Request for Native Files**. Other than as specifically set forth above, a Producing Party need not produce documents in Native Format. If good cause exists for the Receiving Party

to request production of certain documents in Native Format, the Receiving Party may request production in Native Format by providing a list of the Bates numbers of documents it requests to be produced in Native Format. The Producing Party shall not unreasonably deny such requests. Producing Party shall produce an overlay to ensure that the "NativeLink" entry in the data load file indicates the relative file path to each Native File in such production, and all Extracted Text and applicable Metadata fields.

i. **Hidden Content**. To the extent that a document or ESI was saved with hidden content, such as comments or tracked changes, hidden slides, hidden columns, hidden worksheets, or other hidden text, the document or ESI shall be imaged showing that hidden content, to the extent the Producing Party can practicably do so using an automated process. If for some reason a document containing cannot be imaged to show all hidden text (e.g., full text of comments), it will be produced in Native Format.

j. **Password Protected Files**. The Parties agree that they will take reasonable steps to unencrypt and index any password-protected documents or other encrypted containers prior to applying search terms, TAR, or other filtering methodologies so that the document can be reviewed and produced, if applicable.

k. **Embedded Documents**. Non-image files embedded within documents, such as spreadsheets within a PowerPoint, will be extracted as separate documents and treated like attachments to the document in which they were embedded, e.g., related back to the respective top level parent document (standalone file, email message, etc.) via the BegAttach and EndAttach files referenced in Appendix A. And the Bates number of the source file from which the embedded file is extracted shall be provided as metadata associated with the embedded file, as described in Appendices B and D.

The Parties agree that certain embedded documents – such as graphic objects embedded within documents or emails, such as embedded logos, signature blocks, OLEObjects, images or pictures, systems and/or container files (e.g., OLE2, .bin, and similar files that hold embedded files but which do not contain user data), and backgrounds -- *need not be extracted as separate documents*.

l. **Confidentiality Designations**. Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order entered in this matter. Each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file and indicated on its corresponding TIFF placeholder.

m. **Foreign Language Documents**. To the extent that documents or ESI are produced that contain languages other than English, in whole or in part, the Producing Party shall produce all foreign language document and ESI in the original language. The Producing Party has no obligation to provide a translation of the documents or ESI or any portion thereof.

n. **Databases and Other Structured Data.** The parties shall meet and confer regarding the production format and scope of data contained in databases in order to ensure that any information produced is reasonable usable by the receiving party and that its production does not impose an undue burden on the producing party, by, for example, requiring the development of reports and/or software code to extract the information. To avoid doubt, information will be considered usable when produced in CSV format, tab-delimited text format, Microsoft Excel format, or Microsoft Access format.

o. **Compressed files**. Compression file types (e.g., .CAB, .GZ, .RAR. .ZIP), shall be decompressed to ensure that a compressed file within a compressed file are decompressed into the

lowest possible compression resulting in individual folders and/or files.

p. **Message, chat and collaboration software**. The Parties agree that message, chat and collaboration software ESI (e.g., Microsoft Teams, Onedrive, Slack, Facebook Messenger, Signal, or WhatsApp) may be discoverable subject to FRCP 26(b) if its discovery is proportional and relevant to either Party's claims or defenses in this dispute. The Parties further agree that the most efficient and cost-effective methods for collecting and producing such ESI may depend on the specific collaboration software or text messaging platform in use. In the case of chat messages generated from the use of chat or messaging platforms, the Parties agree that it may be necessary to produce relevant messages with the context of prior-in-time and subsequent in-time chat messages. The Parties will meet and confer to discuss the methods to collect message or chat ESI, and the Parties agree to meet and confer regarding the processing and production format for relevant communications in collaboration software prior to any production of chat messages.

q. **Hyperlinked Documents and Modern Attachments.** RESERVED. The Parties reserve all rights, and once they have advanced their data mapping and Rule 26(f) discussions further, they will make submissions to the Court if Court guidance is required with respect to hyperlinked documents and modern attachments.

r. **Production Media and Access Controls.** Documents shall be encrypted and produced through electronic means, such as secure file sharing methods (e.g., SFTP), or on CD, DVD, flash drive or external hard drive ("Production Media"). Each piece of Production Media shall identify a production number corresponding to the production volume (e.g., "VOL001"). Each piece of Production Media shall also identify: (a) the case caption; (b) the following label: "This media contains material subject to Court Ordered security measures"; (c) the producing party's name; (d) the production date; and (e) the Bates Number range of the materials on the

Production Media.

Nothing in this Order will preclude or impair any and all protections provided by the parties by any Protective Order(s) agreed and entered into by the parties. Any data produced by the producing party must be protected in transit, in use, and at rest by all in receipt of such data. Parties will use best efforts to avoid the unnecessary copying or transmittal of produced documents. Any copies made of produced data must be kept on media or hardware employing whole-disk or folder level encryption or otherwise secured on information systems and networks in a manner consistent with the best practices for data protection. If questions arise, Parties will meet and confer to ensure security concerns are addressed prior to the exchange of any documents.

s. **Data Load Files/Image Load Files**. Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the image load file(s) in the production. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. All images must be assigned a unique Bates number that is sequential within a given document and across the production sets. The Bates Numbers in the image load file must match the corresponding documents' beginning Bates numbers in the data load file. Images for a given document must reside together in the same folder. The maximum number of image files should be limited to 10,000 per folder.

The total number of documents in a production should match the total number of records in the data load file. Load files shall not vary in format or structure within a production, or from one production to another.

t. **Time Zone**. Where technologically feasible without undue burden, the images for produced Documents, shall show time stamps in Coordinated Universal Time ("UTC").

## APPENDIX D: REQUIRED METADATA FIELDS FOR ESI

**Metadata Fields**.[1] The Parties agree that Metadata will be produced for all produced documents and ESI, whether produced in Native Format or as TIFF Images.

Each of the Metadata and coding fields set forth below that can be extracted shall be produced for each document. The parties are not obligated to populate or edit manually any of the fields listed in Appendix D, if such fields cannot be extracted from a document, with the exception of the following: (a) BEGBATES, (b) ENDBATES, (c) BEGATTACH, (d) ENDATTACH, (e) PRODVOL, (f) ALLCUSTODIAN(S), (g) CONFIDENTIALITY, (h) REDACTIONS, (i) NATIVEFILEPATH, (j) TEXTFILEPATH, and (k) HASHVALUE, which should be populated by the party or party's vendor. The parties will make reasonable efforts to ensure that metadata fields automatically extracted from the documents correspond directly to the information that exists in the original documents.

| Field Name | Field Description |
|---|---|
| BEGBATES | Beginning Bates number as stamped on the production image |
| ENDBATES | Ending Bates number as stamped on the production image |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| PRODVOL | Production volume |
| ALLCUSTODIAN(S) | Individual(s) from whom the document was obtained and de-duplicated out during global de-duplication |
| CONFIDENTIALITY | Confidentiality designation assigned to the document |
| NATIVEFILEPATH | Native File Link (Native Files only) |

[1] The Field Names and Descriptions in this ESI Protocol are meant to serve as a guide; the Parties acknowledge that Field Names can vary from system to system and even between different versions of systems.

| | |
|---|---|
| TEXTFILEPATH | Path to extracted text/OCR file for document |
| HASHVALUE | MD5 hash value of document |
| TIMEZONEUSED | Metadata pertaining to dates and times will be standardized to UTC. |
| AUTHOR | Any value populated in the Author filed of the document properties (Edoc or attachment only) |
| DOCDATETIME | Date the document was created (format: MM/DD/YYYY HH:MM SS) (Edoc or attachment only) |
| DATEMODIFIED | Date when document was last modified according to filesystem information (format: MM/DD/YYYY) (Edoc or attachment only) |
| FILENAME | Filename of an electronic document |
| FILESIZE | Size of native file, in bytes |
| ALLPATHS | This field should be populated with the folder paths of all duplicate files (Email and Edocs) that were suppressed during deduplication. |
| TITLE | Any value populated in the Title field of the document properties |
| DOCEXT | File extension of document pulled from the document properties |
| PAGE COUNT | Page Count or an Image Count, if auto generated |
| HASTRACKCHANGES | Indication of whether document has track changes (format True/False) |
| HIDDENDATA | Populated for any document that the system identifies as having hidden data, including PDFs, Excel, PPT, and Word (Format True/False) |
| FROM | The sender of the email |
| TO | All recipients that were included on the “To” line of the email |
| CC | All recipients that were included on the “CC” line of the email |
| BCC | All recipients that were included on the “BCC” line of the email |
| DATETIMERECEIVED | Date and time email was received (format: MM/DD/YYYY HH:MM SS) |
| DATETIMESENT | Date and time email was sent (format: MM/DD/YYYY HH:MM SS) |
| EMAILSUBJECT | Subject line of email pulled from the document properties |
| ATTACHCOUNT | Count of attachments files |
| ATTACHNAMES | Filenames for attachments |
| IMPORTANCE | Indication of the importance level of an email as 0 for low importance, 1 for normal importance, and 2 is for high importance. |
| REDACTIONS | Indicate Yes/No if document redacted |

| | |
|---|---|
| MESSAGE_BEGINDATE | Date and time Message was sent (format: MM/DD/YYYY HH:MM SS) for first message in chat thread. |
| MESSAGE_ENDDATE | Date and time Message was sent (format: MM/DD/YYYY HH:MM SS) for Last message in chat thread. |
| MESSAGE_NAME | Name assigned to the Message Thread |
| MESSAGE_PARTICIPANTS | Name and numbers for the individuals in chat thread |
| MESSAGE_COUNT | Count of messages in Thread |
| APPLICATION | The application that the message was created in (WhatsApp, AppMessage, IMessage, SMS, MMS, Etc.) |